IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SAMUEL CARSON | : | CIVIL ACTION |
| | : | |
| v. | : | No. 23-2661 |
| | : | |
| CITY OF PHILADELPHIA, et al. | : | |

## MEMORANDUM

**Judge Juan R. Sánchez**                                                                                                                                                  **May 8, 2024**

      In 1995, Samuel Carson was sentenced to death for capital murder after a trial in the Philadelphia County Court of Common Pleas. In 2011, his death sentence was commuted to life in prison, and in 2021, his conviction was overturned after exculpatory evidence came to light. Instead of retrying Carson, the District Attorney of Philadelphia offered him a plea deal. Having already spent 28 years in prison, 16 of those in solitary confinement on death row, Carson pled to third-degree murder in exchange for time served on July 12, 2021. He now brings § 1983 claims for violation of his Fourteenth Amendment right to due process and a fair trial, civil rights conspiracy, and malicious prosecution against former District Attorney ("DA") Lynne Abraham and former Assistant District Attorneys ("ADA") Charles Grant and David Desiderio (collectively, the "DA Defendants").[1] Carson also brings a § 1983 claim for supervisory liability against DA Abraham. The DA Defendants move to dismiss, arguing they have absolute immunity and that DA Abraham and ADA Grant did not have any personal involvement in the alleged misconduct.

      The motion to dismiss will be granted in part and denied in part as follows. The motion to dismiss the claims against DA Abraham and ADA Grant will be granted because Carson does not

---

[1] Carson also sues the City of Philadelphia, the Philadelphia Police Department, the Philadelphia DA's Office, *see* n.3, four named Philadelphia Homicide Detectives and/or Officers, and ten John Doe Police Officers and Supervisors. The claims against these defendants are not at issue in this motion.

1

dispute that the Complaint fails to allege their personal involvement in the misconduct, having failed to respond to their argument on this point. The motion will also be granted as to DA Abraham and ADA Grant because they are entitled to absolute prosecutorial immunity for the acts alleged. But the motion to dismiss the claims against ADA Desiderio will be denied, as it is not clear from the face of the Complaint that ADA Desiderio is entitled to absolute immunity for his actions in interviewing Monique Wylie.

**BACKGROUND**

On November 22, 1993, William Lloyd was shot to death on the 2100 block of Clymer Street in Philadelphia. Compl. ¶ 29, ECF No. 1. Plaintiff Samuel Carson was arrested and charged with Lloyd's murder. *Id.* ¶ 31. At trial, the Commonwealth's case primarily depended on four witnesses: Edgar Clark, Ramon Burton, Monique Wylie, and Ruth Beverly. *Id.* ¶ 32. The Complaint provides no detail regarding Clark's testimony, but alleges it was obtained through "coercion and falsification." *Id.* ¶ 98. As to Burton, the Complaint alleges he was a known drug dealer and undocumented immigrant with an outstanding arrest warrant. *Id.* ¶ 37. Burton testified that on November 22, he drove his girlfriend's car to Clymer Street with another drug dealer, where Carson and a second man shot at Burton's vehicle, and he returned fire. *Id.* ¶ 38. Burton further testified that after Carson fled, Burton heard more gun shots. *Id.*

The third witness, Wylie, had a criminal record, was on probation at the time of the shooting, and was awaiting sentencing on a probation violation. *Id.* ¶ 56. ADA Desiderio met with Wylie before trial and offered her a reduced sentence if she testified that Carson had solicited her to assist in a robbery. *Id.* ¶ 57. Wylie refused, but at trial ADA Desiderio introduced testimony by Philadelphia Police Officer Glenn Keenan stating Wylie "made . . . inculpatory statements [implicating Carson in a robbery attempt] on a prior occasion." *Id.* ¶¶ 57, 98. Wylie subsequently

swore in an affidavit she had not witnessed Lloyd's murder, but "was pressured directly by ADA Desiderio to testify that she had done so." *Id*. ¶ 58.

The fourth witness, Beverly, had a chronic drug addiction and was the only alleged eyewitness to Lloyd's murder. *Id*. ¶ 54. But another individual "provided a statement that Beverly could not have . . . seen the shooting because she had collapsed to the ground . . . due to . . . intoxication." *Id*. It is unclear if this statement was disclosed to trial counsel.

On July 14, 1995, Carson was convicted of capital murder, and on July 18, 1995, he was sentenced to death. *Id*. ¶ 11. In 2019, the Philadelphia DA's Office made the prosecution and homicide detective files available to Carson on habeas review. *Id*. ¶ 34. The files contained three previously undisclosed statements given by Ronald Waters, Carlene Matthews, and Gwendolyn Schilling. *Id*. ¶ 35. Waters and Matthews' statements both contradicted Burton's trial testimony. *Id*. ¶¶ 41, 43. And Schilling's statement contradicted "flash information" ADA Desiderio presented at trial. *Id*. ¶ 46. All three statements were "excluded from the discovery letter sent by ADA Grant to the Carson trial counsel." *Id*. ¶ 49.

On July 12, 2021, Carson's conviction was overturned. *Id*. ¶ 64. He filed this action on July 12, 2023, and the DA Defendants filed a motion to dismiss on September 8, 2023. ECF Nos. 1, 7. Carson filed a response in opposition on October 2, 2023, and the DA Defendants filed a reply brief in support on October 10, 2023. ECF Nos. 11-12.

**STANDARD OF REVIEW**

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the facts pled "allow[] the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. In evaluating a Rule 12(b)(6) motion, a district court must separate the legal and factual elements of the plaintiff's claims. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). The court must assume the truth of all well-pleaded factual allegations, construe the facts and the reasonable inferences therefrom "in a light most favorable to the [plaintiff,]" and "determine whether they 'plausibly give rise to an entitlement to relief.'" *Oakwood Labs., LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021) (quoting *Iqbal*, 556 U.S. at 679) (alteration in original).

**DISCUSSION**

Carson brings claims under 42 U.S.C. § 1983 against DA Abraham, ADA Grant, and ADA Desiderio in their individual capacities for violation of his Fourteenth Amendment right to due process and a fair trial, civil rights conspiracy, and malicious prosecution.[2] He also asserts a § 1983 claim for supervisory liability against DA Abraham.[3] The DA Defendants move to dismiss on two grounds. First, DA Abraham and ADA Grant argue Carson has not pled any facts showing they had personal involvement in the alleged misconduct. And because Carson did not address this

---

[2] Carson also brought a § 1983 claim for failure to intervene. *See* Compl. ¶¶ 129-132, ECF No. 1. The DA Defendants moved to dismiss this claim, and Carson voluntarily withdrew it. *See* Pl.'s Resp. Opp'n ¶¶ 3-5, ECF No. 11. Accordingly, the Court need not address the DA Defendants' arguments regarding qualified immunity, which only applied to this claim.

[3] The § 1983 supervisory liability claim is also asserted against the City of Philadelphia, the Philadelphia Police Department, and the Philadelphia DA's Office. Compl. ¶¶ 133-136, ECF No. 1. The claim against the City (and the Police Department as a municipal entity) is not at issue in this motion. As for the DA's Office, it is unclear whether Carson intended to include the Office as a party. Although the DA's Office is listed as a defendant in the caption of Count V, it is not listed in the case caption or in Section III, which lists the parties to the case. *See* Compl. ¶¶ 17-26, ECF No. 1. And a summons was not issued for the Office. Regardless, the Court notes the DA's Office is not a legal entity which can be sued under § 1983. *See, e.g., Joobeen v. City of Phila. Police Dep't*, Civ. No. 09-1376, 2010 WL 844587, at *5 (E.D. Pa. Mar. 4, 2010).

argument in his response, DA Abraham and ADA Grant also argue Carson waived his claims against them. Second, all three DA Defendants argue they are entitled to absolute prosecutorial immunity; Carson contends immunity does not apply because the DA Defendants were acting in investigative and/or administrative capacities. The motion to dismiss will be granted as to the claims against DA Abraham and ADA Grant, as Carson does not dispute that the Complaint fails to allege their personal involvement in the misconduct, and they are also entitled to absolute prosecutorial immunity. But since it is not clear at this stage of litigation whether ADA Desiderio was acting in a prosecutorial or investigative capacity when he interviewed Wylie, the motion to dismiss will be denied as to the claims against him.

As an initial matter, DA Abraham and ADA Grant argue Carson waived his claims against them because he did not respond to their motion to dismiss on the grounds of lack of personal involvement. Under Local Rule of Civil Procedure 7.1(c), "any party opposing [a] motion shall serve a brief in opposition." The Rule further provides that "[i]n the absence of a timely response, the motion may be granted as uncontested." Accordingly, "plaintiffs who fail to brief their opposition to portions of motions to dismiss do so at the risk of having those parts of the motion[] to dismiss granted as uncontested." *Celestial Cmty. Dev. Corp., Inc. v. City of Phila.*, 901 F. Supp. 2d 566, 578 (E.D. Pa. 2012); *see also, e.g.*, *Acuri v. Cnty. of Montgomery*, Civ No. 20-5408, 2021 WL 1811576, at *10 (E.D. Pa. May 6, 2021) ("Plaintiffs' failure to substantively respond to Individual Defendants' arguments to dismiss Count V constitutes a waiver."); *Cook v. W. Homestead Police Dep't*, 2:16-CV-01292, 2017 WL 1550190, at *3 (W.D. Pa. May 1, 2017)

("Plaintiffs' failure to respond at all to [Defendants'] arguments for dismissal . . . will be read as a concession of those arguments, if not a waiver of those issues."). [4]

Because Carson's response in opposition to the DA Defendants' motion to dismiss did not address DA Abraham or ADA Grant's personal involvement in the alleged misconduct, the Court will grant the motion to dismiss the claims against DA Abraham and ADA Grant as uncontested on this point. The Court will also grant the motion to dismiss as to DA Abraham and ADA Grant because they have absolute immunity for the actions pled.

Prosecutors are entitled to absolute immunity from liability under § 1983 for acts that are "intimately associated with the judicial phase of the criminal process," such as "initiating a prosecution and . . . presenting the State's case." *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976). But "absolute immunity does not extend to '[a] prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings.'" *Yarris v. Cnty. of Del.*, 465 F.3d 129, 135 (3d Cir. 2006)

---

[4] For the sake of explanation, the Court notes Carson has pled the personal involvement of DA Abraham and ADA Grant. When a plaintiff brings a § 1983 claim against a defendant in his or her individual capacity, the plaintiff must plead that the defendant had "personal involvement in the alleged wrongs." *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir.1988). Liability in individual capacity § 1983 actions cannot be based on a theory of respondeat superior. *Id*. But supervisors can be liable "if they established and maintained a policy, practice or custom which directly caused [the] constitutional harm," or "if they participated in violating the plaintiff's rights, directed others to violate them, or, as the person[s] in charge, had knowledge of and acquiesced in [their] subordinates' violations." *Santiago v. Warminster Twp.*, 629 F.3d 121, 129 n.5 (3d Cir. 2010) (internal quotation marks and citation omitted) (alterations in original).

The Complaint alleges DA Abraham, as final policymaker for the Philadelphia DA's Office, established a policy of suppressing *Brady* material and "expected that any case that was screened and accepted should result in conviction." Compl. ¶¶ 75, 80-81, ECF No. 1. Carson thus has pled DA Abraham's personal involvement for purposes of the supervisory liability claim. But for the Fourteenth Amendment, civil rights conspiracy, and malicious prosecution claims, there are no factual allegations that DA Abraham personally directed or knew of the alleged misconduct by ADAs Grant and Desiderio. As to ADA Grant, the allegation that he omitted the Waters, Matthew, and Schilling statements from the discovery letter sent to trial counsel suffices to establish his personal involvement in this case. *Id.* ¶ 49.

(alteration in original) (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993)). When a defendant asserts absolute immunity, "the onus is on the prosecutor to demonstrate that absolute immunity should attach to each act he [or she] allegedly committed that gave rise to a cause of action." *Fogle v. Sokol*, 957 F.3d 148, 160 (3d Cir. 2020) (internal quotation marks and citation omitted). At the motion to dismiss stage, "that burden is uniquely heavy" because the defendant's entitlement to absolute immunity must "clearly appear[] on the face of the complaint." *Id*. (citation omitted as to second quotation).

In analyzing whether absolute immunity attaches, courts first "ascertain just what conduct forms the basis for the plaintiff's cause of action." *Roberts v. Lau*, 90 F.4th 618, 625 (3d Cir. 2024) (citation omitted). Second, courts "determine what function (prosecutorial, administrative, investigative, or something else entirely) that act served." *Id*. This analysis "focuses on the unique facts of each case and requires careful dissection of the prosecutor's actions." *Id*. at 627 (quoting *Odd v. Malone*, 538 F.3d 202, 210 (3d Cir. 2008)). However, the "ultimate analysis is whether a defendant has established absolute prosecutorial immunity from a given *claim*." *Fogle*, 957 F.3d at 161 (italics in original). The Court will address DA Abraham and ADA Grant's immunity together, followed by ADA Desiderio's immunity.

The Complaint alleges DA Abraham, as the final policymaker for the DA's Office, established a policy of suppressing *Brady* material and "expected that any case that was screened and accepted should result in conviction." Compl. ¶¶ 75, 80-81, ECF No. 1. The Complaint also alleges ADA Grant purposefully omitted the impeaching and/or exculpatory statements of Waters, Matthew, and Schilling from the discovery letter sent to trial counsel, and that he "knew about misconduct." *Id*. ¶¶ 49, 86. Because these actions are prosecutorial in function, DA Abraham and ADA Grant have absolute immunity from all claims against them. *See Munchinski v. Solomon*,

7

747 F. App'x 52, 58 (3d Cir. 2018) ("Making pretrial discovery decisions is part and parcel of that advocative function, and frequently involves the exercise of discretion. As such, the prosecutor is entitled to absolute immunity from suit—even when he intentionally withholds evidence that is exculpatory under *Brady*."); *see also Smith v. Holtz*, 210 F.3d 186, 199 n.18 (3d Cir. 2000) (noting trial prosecutor had absolute immunity for his decision not to disclose exculpatory evidence).

Turning to ADA Desiderio, the Complaint alleges he "used Burton's false testimony to bolster Beverly's testimony while simultaneously concealing . . . evidence that contradicted both Burton's and Beverly's testimony." Compl. ¶ 55, ECF No. 1. ADA Desiderio also allegedly "coerced . . . Mr. Burton, Ms. Wylie and Officer Keenan to fabricate false testimony." *Id.* ¶ 110. There are no further factual allegations as to how or when ADA Desiderio "coerced" Burton's testimony. As to Wylie's and Officer Keenan's testimony, the Complaint alleges:

> Wylie met with ADA Desiderio prior to trial. During that meeting, Ms. Wylie provided a statement, [and] ADA Desiderio offered . . . a reduced sentence on her probation violation if [she] testified that Mr. Carson . . . solicited her to assist in a robbery attempt. Once Ms. Wylie refused, the Commonwealth introduced at trial, through Philadelphia Police Officer Glenn Keenan, [testimony] implicating Mr. Carson in the robbery attempt. Ms. Wylie subsequently swore by affidavit, that she had not witnessed the Lloyd murder but was pressured directly by ADA Desiderio to testify that she had done so.

*Id.* ¶¶ 57-58; *see also id.* ¶ 98.

Insofar as ADA Desiderio made trial decisions regarding witnesses' testimony and concealed impeachment evidence, he is entitled to absolute prosecutorial immunity. *See Imbler*, 424 U.S. at 431 (presenting case); *Smith*, 210 F.3d at 199 n.18 (withholding evidence). The Court, however, cannot determine whether ADA Desiderio is entitled to absolute immunity for his actions in interviewing Wylie because of the lack of factual specificity in the Complaint. There is no information regarding when this interview occurred. *See Odd*, 538 F.3d at 211 ("[T]he period during which prosecutors are most likely functioning in a 'quasi-judicial' capacity is the time

8

between indictment and dismissal, acquittal, or conviction."). And there are no factual allegations regarding the circumstances of the interview, e.g., whether ADA Desiderio "went looking for a new witness to provide false testimony," or was interviewing a witness "who ha[d] been located and identified by investigators." *Roberts*, 90 F.4th at 625, 628. Since ADA Desiderio's entitlement to absolute prosecutorial immunity does not "clearly appear on the face of the complaint," the Court will deny the motion to dismiss the claims against him. *Fogle*, 957 F.3d at 161 (citation omitted); *see also id*. at 162 n.14.

Because Carson does not dispute that the Complaint fails to allege the personal involvement of DA Abraham and ADA Grant in the misconduct, and because they are entitled to prosecutorial immunity, the motion to dismiss will be granted as to the claims against them. But it is not clear ADA Desiderio is entitled to absolute prosecutorial immunity. Therefore, the motion to dismiss will be denied as to the claims against ADA Desiderio.

An appropriate Order follows.

                BY THE COURT:

                /s/ Juan R. Sánchez
                Juan R. Sánchez, J.