IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SAMUEL CARSON | : | CIVIL ACTION |
| | : | |
| v. | : | No. 23-2661 |
| | : | |
| CITY OF PHILADELPHIA, et al. | : | |

**MEMORANDUM**

**Judge Juan R. Sánchez**                                                            **August 13, 2024**

      Plaintiff Samuel Carson was convicted of first-degree murder in 1995 and spent more than 27 years in prison, including 16 years in solitary confinement on death row. After his conviction was overturned on collateral review, Carson pled guilty to third-degree murder in exchange for 14 to 28 years of incarceration on July 12, 2021. He now brings suit under 42 U.S.C. § 1983 against the City of Philadelphia, the Philadelphia Police Department, former Philadelphia Homicide Detectives Mangoni, Collins, and Reinhold, and former Philadelphia Police Officers Glenn Keenan and John Does 1-10 (collectively, the "City Defendants"),[1] for violation of Carson's Fourteenth Amendment due process rights, civil rights conspiracy, malicious prosecution, failure to intervene, supervisory liability, and municipal liability. The City Defendants move to dismiss,

---

[1] Because the Philadelphia Police Department and Philadelphia District Attorney's Office are municipal entities, the Court will direct the Clerk of Court to terminate these Defendants from the docket. *See Martin v. Red Lion Police Dep't*, 146 F. App'x 558, 562 n. 3 (3d Cir. 2005); *see also* 53 P.S. § 16257. Additionally, though Carson lists John Does 1-10 in the caption and "Parties" section of the Complaint, no mention of any John Doe appears in the "Factual Allegations" section. Accordingly, the Court will also direct the Clerk of Court to terminate the John Doe defendants. This termination is without prejudice to Carson's ability to move to file an amended complaint or to join a party should discovery reveal other appropriate defendants.

In addition to the moving defendants, Carson also sued the Philadelphia District Attorney's Office, former District Attorney Lynne Abraham, former Assistant District Attorney Charles J. Grant, and former Assistant District Attorney David Desiderio (the "DA Defendants"). The DA Defendants moved to dismiss on September 8, 2023. The Court granted the motion in part and denied the motion in part on May 8, 2024, and dismissed Abraham and Grant. ECF Nos. 14-15.

1

arguing (1) this suit is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), (2) the Complaint fails to allege the Detectives violated Carson's constitutional rights, and (3) the Complaint fails to allege sufficient facts to state claims for civil rights conspiracy, supervisory liability, and municipal liability.

The motion to dismiss will be granted in part and denied in part as follows. The motion will be granted as to (1) the claim for malicious prosecution, which is barred by *Heck*, (2) the Fourteenth Amendment and civil rights conspiracy claims against Detectives Mangoni, Collins, and Reinhold, who did not have any personal involvement in the constitutional violations pled, (3) the claim for failure to intervene, which is withdrawn, and (4) the claim for supervisory liability premised on failure to train, which is unsupported by the pleadings. But because Carson alleges Officer Keenan testified falsely in court, the motion will be denied as to the Fourteenth Amendment and civil rights conspiracy claims against him. And because Carson alleges the City of Philadelphia had a custom or policy of coercing false statements, suppressing *Brady* material, and failing to discipline police officers, the motion will also be denied as to the municipal liability claim against the City of Philadelphia.

**BACKGROUND**

On November 22, 1993, William Lloyd was shot to death on the 2100 block of Clymer Street in Philadelphia. Compl. ¶ 29, ECF No. 1. Philadelphia Police Department Homicide Detectives Mangoni, Collins, and Reinhold and Police Officer Glenn Keenan all participated in the murder investigation. *Id.* ¶ 30. Plaintiff Samuel Carson was arrested, charged, and tried for Lloyd's murder. *Id.* ¶ 31.

At trial, the Commonwealth's case primarily depended on four witnesses: Edgar Clark, Ramon Burton, Monique Wylie, and Ruth Beverly. *Id.* ¶ 32. The Complaint provides no detail

regarding Clark's testimony, but alleges it was obtained through "coercion and falsification." *Id.* ¶ 98. As to Burton, the Complaint alleges he was a known drug dealer and undocumented immigrant with an outstanding arrest warrant, which "was used to compel favorable trial testimony."[2] *Id.* ¶ 39. The third witness, Wylie, had a criminal record, was on probation at the time of the shooting, and was awaiting sentencing on a probation violation. *Id.* ¶ 56. Assistant District Attorney ("ADA") David Desiderio met with Wylie before trial and offered her a reduced sentence if she testified that Carson had solicited her to assist in a robbery. *Id.* ¶ 57. Wylie refused, but at trial ADA Desiderio introduced testimony by Officer Keenan stating Wylie "made . . . inculpatory statements [implicating Carson in a robbery attempt] on a prior occasion." *Id.* ¶¶ 57, 98. Wylie subsequently swore in an affidavit she had not witnessed Lloyd's murder, but "was pressured directly by ADA Desiderio to testify that she had done so." *Id.* ¶ 58. The fourth witness, Beverly, had a chronic drug addiction and was the only alleged eyewitness to Lloyd's murder.[3] *Id.* ¶ 54.

On July 14, 1995, Carson was convicted of first-degree murder, and on July 18, 1995, he was sentenced to death. *Id.* ¶ 11. He spent 16 years on death row before a state court commuted his sentence to life in prison. *Id.* ¶ 63. Carson continued to pursue relief through collateral attack, and in 2019, the Philadelphia District Attorney's Office (the "DA" or "DA's Office") provided him with the prosecution and homicide detective files. *Id.* ¶ 34. These files contained three previously undisclosed witness statements. *Id.* ¶ 35. The first statement was from eyewitness Ronald Waters, which was taken by Detective Mangoni. *Id.* ¶ 41. Waters' statement contradicted

---

[2] Burton testified that on November 22, 1993, he drove his girlfriend's Honda Accord to Clymer Street with another drug dealer, where Carson and a second man shot at Burton's vehicle and he returned fire. *Id.* ¶ 38. Burton further testified he heard more gun shots after Carson fled. *Id.*

[3] Another individual named Troy Powell, however, "provided a statement that Beverly could not have . . . seen the shooting because she had collapsed to the ground . . . due to . . . intoxication." *Id*. ¶ 54. It is unclear if this individual's statement was disclosed to Carson's trial counsel.

Burton's trial testimony.[4] *Id.* ¶¶ 40-41. The second statement was provided by Charlene Matthews, who was interviewed by Detective Collins. *Id.* ¶ 43. Matthews was Burton's common-law wife, and her statement also contradicted his trial testimony.[5] *Id.* The third statement, by Gwendolyn Schilling, was taken by Detective Reinhold and contradicted some of the evidence ADA Desiderio introduced at trial.[6] *Id.* ¶ 46. "Although the Philadelphia DAs [sic] Office possessed the statements," all three were "excluded from the discovery letter sent by ADA [Charles] Grant to the Carson trial counsel." *Id.* ¶¶ 48-49.

Carson alleges that at the time of his investigation and trial for Lloyd's murder, the City of Philadelphia and its Police Department maintained a pattern and practice of misconduct in homicide investigations, including fabrication of evidence, unlawful interrogation of witnesses, and failure to conduct proper investigations. *Id.* ¶¶ 83-102. In support, he points to numerous cases from the late 1980s and early 1990s in which police misconduct occurred in criminal investigations. *See id.* ¶¶ 86, 100. He further alleges the Philadelphia Police Department and the DA's Office both maintained a pattern and practice of coercing inculpatory statements from

---

[4] Waters stated he was on Clymer Street to purchase crack cocaine from Burton at the time of Lloyd's murder. *Id.* ¶ 41. Waters had traveled to Clymer Street in a Honda Accord, which "a lady named Collie" had given to him for repairs. *Id.* Before Waters and Burton finished the drug transaction, a gunman approached Burton, yelled, and fired in his direction. *Id.* Waters thus contradicted Burton's testimony regarding who drove the Honda Accord, the number of shooters, and the shooting situation. Waters further stated he fled the scene on foot, and when he returned the next day to retrieve the Honda Accord, it was no longer there. *Id.*

[5] Charlene Matthews told Detective Collins she gave her car to a mechanic named Ron for repairs, and that Burton scheduled and conducted the vehicle pick up with Ron. *Id.* ¶ 43. Her statement thus aligned with Ronald Waters' statement.

[6] Schilling lived on the street directly south of Clymer. *Id.* ¶ 46. She stated she heard the shooting and looked out her window to see if anyone was running down the street, but did not see anyone. *Id.* In contrast, ADA Desiderio introduced evidence "that someone ran down the 2000 block of Clymer towards 20th Street," and then argued this evidence showed Carson "was the shooter because that is where he lived." *Id.*

witnesses, *see id.* ¶¶ 94-102, and that the Police Department failed to adequately supervise and discipline police misconduct, *id.* ¶¶ 103-07.

On July 12, 2021, after Carson had spent 27 and a half years in prison, his conviction was vacated on collateral review. *Id.* ¶ 64; *see also Commw. v. Carson*, Docket No. CP-51-CR-0228371-1994, Ct. C.P. Phila. Cnty. Carson pled guilty to third-degree murder in exchange for a sentence of 14 to 28 years of incarceration, instead of waiting for a new trial. *Id.* ¶ 67. He was thereafter released immediately on time served. *Id.* On July 12, 2023, Carson filed this action. ECF No. 1. On September 19, 2023, the City Defendants filed a motion to dismiss. ECF No. 8. And on October 10, 2023, Carson filed a response in opposition. ECF No. 13. The motion is now ripe for review.

**STANDARD OF REVIEW**

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. In evaluating a Rule 12(b)(6) motion, a district court must separate the legal and factual elements of the plaintiff's claims. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). The court must assume the truth of all well-pleaded factual allegations, construe the facts and the reasonable inferences therefrom "in a light most favorable to the [plaintiff,]" and "determine whether they 'plausibly give rise to an entitlement to relief.'" *Oakwood Labs., LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021) (quoting *Iqbal*, 556 U.S. at 679) (alteration in original).

**DISCUSSION**

The City Defendants move to dismiss all claims against them, arguing (1) this suit is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), (2) the Complaint does not allege Detectives Mangoni, Collins, and Reinhold violated Carson's constitutional rights, (3) they have qualified immunity with respect to the failure to intervene claim because it is not a clearly established right in the context of trials, and (4) the Complaint fails to allege sufficient facts to state claims for civil rights conspiracy, supervisory liability, and municipal liability. Carson withdraws the failure to intervene claim,[7] but otherwise opposes the motion. The Court will first address the argument raised by the City Defendants under *Heck v. Humphrey*, 512 U.S. 477 (1994), and then the argument that Detectives Mangoni, Collins, and Reinhold did not violate Carson's constitutional rights. Finally, the Court will address each remaining claim for civil rights conspiracy, failure to intervene, supervisory liability, and municipal liability in turn.

As a threshold matter, the City Defendants argue Carson's entire case is barred by *Heck* because he "remains legally guilty of the murder of Mr. Lloyd." Mem. Supp. Mot. Dismiss 9, ECF No. 8. In *Heck*, the Supreme Court considered a § 1983 suit challenging the constitutionality of the plaintiff's conviction, brought while the plaintiff was still in prison for that same conviction. 512 U.S. at 478-79. In considering Heck's claim, the Supreme Court noted "the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments applies to § 1983 damages actions that necessarily require the plaintiff to prove

---

[7] *See* Mem. Supp. Pl.'s Resp. Opp'n 19, ECF No. 13-2 ("Plaintiff acknowledges that failure to intervene claims have been brought almost exclusively in the context of excessive use of force. Accordingly, based on the relevant case law, Plaintiff withdraws his Failure to Intervene claims against all Defendants."). The motion to dismiss will therefore be granted with respect to Count IV as unopposed.

6

the unlawfulness of his conviction or confinement[.]" *Id*. at 486. Citing the principles of finality and consistency, the Court therefore held:

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.

*Id*. at 486-87. Accordingly, when a prisoner brings a suit for damages under § 1983:

> the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

*Id.* at 487.

The Supreme Court and the Third Circuit Court of Appeals have not yet ruled on the question in this case: does *Heck* necessarily bar § 1983 claims based on a conviction that was overturned where the plaintiff has a second, valid conviction for the same conduct? The Courts of Appeals that have considered this question have all answered no: "*Heck* does not automatically bar a § 1983 claim simply because the processes of the criminal justice system did not end up in the plaintiff's favor. A plaintiff need not prove that *any* conviction stemming from an incident . . . has been invalidated, only a conviction that could not be reconciled with the claims of his civil action." *Poventud v. City of New York*, 750 F.3d 121, 132 (2d Cir. 2014) (quoting *VanGilder v. Baker*, 435 F.3d 689, 692 (7th Cir. 2006)); *see also Jackson v. Barnes*, 749 F.3d 755 (9th Cir. 2014) (concluding plaintiff was not *Heck*-barred from bringing a § 1983 suit based on *Miranda*

7

violations in his first trial).[8]  In other words, Carson's suit is not necessarily barred in full, as the City Defendants argue, because he pled guilty to third-degree murder. Under *Heck*, the Court must analyze each claim's relationship to Carson's convictions individually.

The Court begins this analysis with Carson's Fourteenth Amendment claims for denial of due process and a fair trial based on fabrication and withholding of evidence. Fabrication of evidence and withholding of impeachment or exculpatory evidence are two different claims under the Fourteenth Amendment. Fabrication of evidence "works an unacceptable corruption of the truth-seeking function of the trial process." *Halsey v. Pfeiffer*, 750 F.3d 273, 293 (3d Cir. 2014) (internal quotation marks and citations omitted). Hence, "if a defendant has been convicted at a trial at which the prosecution has used fabricated evidence, the defendant has a stand-alone claim under section 1983 based on the Fourteenth Amendment." *Id.* at 294. Violations of *Brady v. Maryland*, 373 U.S. 83 (1963) occur when "(1) the government withheld evidence, either willfully or inadvertently; (2) the evidence was favorable, either because it was exculpatory or of impeachment value; and (3) the withheld evidence was material." *Lambert v. Blackwell*, 387 F.3d 210, 252 (3d Cir. 2004). *Brady* claims "necessarily imply the invalidity of the challenged conviction in the trial . . . *in which the Brady violation occurred.*" *Poventud*, 750 F.3d at 132 (emphasis in original).

Carson's Fourteenth Amendment claims for fabrication and withholding of evidence are premised on Officer Keenan's false testimony at trial, the DA's failure to share three witness

---

[8] *C.f. Nelson v. Campbell*, 541 U.S. 637, 647 (2004) ("[W]e were careful in *Heck* to stress the importance of the term 'necessarily.' . . . For instance . . . an inmate could bring a challenge to the lawfulness of a search pursuant to § 1983 . . . even if the search revealed evidence used to convict the inmate at trial, because success on the merits would not '*necessarily* imply that the plaintiff's conviction was unlawful.' To hold otherwise would have cut off potentially valid damages actions as to which a plaintiff might never obtain favorable termination—suits that could otherwise have gone forward had the plaintiff not been convicted." (quoting *Heck*, 512 U.S. at 487 n.7.)).

8

statements with Carson's trial counsel, and ADA Desiderio's attempt to pressure Wylie into giving false testimony. These claims undoubtedly implicate Carson's trial and first conviction, which was overturned on collateral review. But the Court concludes the claims do not implicate the validity of Carson's second conviction for two reasons. First, Carson pled guilty to third-degree murder with knowledge of the full body of evidence resulting from Lloyd's murder investigation, including the previously undisclosed witness statements. *See id.* at 136 ("Because Poventud was aware of the undisclosed exculpatory material prior to his guilty plea, his plea could not have implicated the constitutional violations at issue in his trial."). Second, Carson's ultimate guilt or innocence has no bearing on the due process violations alleged. Carson could be guilty of Lloyd's murder, but he would still have claims for fabrication of evidence and *Brady* violations in the first prosecution. *See City of Phila. v. Dennis*, 379 F. Supp. 3d 420, 430 (E.D. Pa. 2019) ("If a plaintiff brings a § 1983 claim that does not depend upon his ultimate guilt or innocence of the underlying conviction, it does not matter even if after the first criminal conviction is vacated, he is convicted a second time for the same conduct.").[9] Therefore, the Court concludes *Heck* does not bar these

---

[9] In moving to dismiss pursuant to *Heck*, the City Defendants attempt to distinguish this case from *Dennis* and other case law by arguing *Dennis* "did not consider whether the evidence allegedly fabricated is the core evidence that also supports the second conviction." Mem. Supp. Mot. Dismiss 14, ECF No. 8. They further argue Carson "expressly challenges the evidence that was developed in support of his conviction for Lloyd's murder. Plaintiff contends throughout his Complaint that he is actually innocent of the murder and that the inculpatory evidence that he murdered Mr. Campbell [sic] was entirely fabricated." *Id.* at 13.

This argument mischaracterizes the pleadings. The Complaint states "Carson is innocent of Capital Murder and/or First-Degree Murder." Compl. ¶ 124, ECF No. 1. This statement is accurate because Carson's first-degree murder conviction was overturned on collateral review. The Complaint also states that if Defendants hadn't fabricated and suppressed evidence, "Carson would have tended to prove his innocence." *Id.* ¶ 114. Drawing all inferences in favor of Carson, the Court reads this statement to imply he would have proven his innocence of first-degree murder. As to fabrication of evidence, while Carson alleges Burton and Clark's statements were "false" and "coerced," *id.* ¶¶ 55, 98, 110, 112, he does not support these "conclusory statements" with specific factual allegations, *Iqbal*, 556 U.S. at 678. As such, the Court does not read Carson's fabrication of

claims as asserted in Count I of the Complaint. Further, to the extent Carson's claims for civil rights conspiracy, supervisory liability, and municipal liability (Counts II, V, VI, and VII) are premised on the alleged fabrication of evidence and *Brady* violations during his first prosecution, these claims do not implicate his 2021 guilty plea. As such, *Heck* does not bar those claims.

Count III, a malicious prosecution claim against the individual defendants, is the last claim to consider vis-à-vis the *Heck* bar. To state a malicious prosecution claim, a plaintiff must plead:

> (1) the defendant[s] initiated a criminal proceeding; (2) the criminal proceeding ended in [his] favor; (3) the defendant[s] initiated the proceeding without probable cause; (4) the defendant[s] acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) [he] suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

*Zimmerman v. Corbett*, 873 F.3d 414, 418 (3d Cir. 2017) (internal quotation marks and citation omitted). Because Carson pled guilty to third-degree murder, this claim fails at the second step: the criminal proceedings related to Lloyd's murder did not end in Carson's favor. For the same reason, this claim is also barred by *Heck* because success would necessarily call Carson's 2021 plea into doubt. *See Curry v. Yachera*, 835 F.3d 373, 378-79 (3d Cir. 2016). The City Defendants' motion to dismiss will be granted as to Count III's claim for malicious prosecution. And because amendment would be futile, Count III will be dismissed with prejudice. *See Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) (noting futility, "mean[ing] that the complaint, as amended, would fail to state a claim upon which relief could be granted" is "[a]mong the grounds that could justify a denial of leave to amend").

---

evidence claim to be based on these statements. But Carson has pled that ADA Desiderio coerced Wylie into giving a false statement, and that Officer Keenan lied on the stand. Their testimony did not make up the full universe of evidence against Carson and thus does not necessarily imply the third-degree murder conviction. Finally, the Court notes that even if it credited the City's argument, Carson would still have a claim for *Brady* violations, independent of fabrication of evidence.

The Court next considers the City Defendants' argument that the Complaint fails to allege constitutional violations by Detectives Mangoni, Collins, and Reinhold. When a plaintiff brings a § 1983 claim against a defendant in his individual capacity, the plaintiff must establish the defendant(s) had "personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*." *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir.1988). Personal involvement can be demonstrated through "allegations of personal direction or of actual knowledge and acquiescence." *Id.*

The Complaint alleges Detectives Mangoni, Collins, and Reinhold "directly participated in the investigation of the Lloyd murder by gathering evidence, obtaining witness statements, responding to and examining the crime scene, and creating and documenting investigative reports and activity sheets." Compl. ¶ 30, ECF No. 1. Additionally, Detective Mangoni interviewed Ronald Waters, while Detective Collins interviewed Charlene Matthews and Detective Reinhold interviewed Gwendolyn Schilling. *Id.* ¶¶ 41, 43, 46. These allegations do not state any claim for constitutional violations by the Detective Defendants, as there are no specific allegations of misconduct in their investigatory work, and the three *Brady* statements were omitted from discovery by the DA's Office, not by the Detectives. *See id.* ¶ 48. And while the Complaint also alleges Burton and Clark's witness statements were "coerced and falsifi[ed]," there are no further details as to the who, what, when, where, or how of the alleged coercion. *Id.* ¶ 98. The City Defendants' motion to dismiss will therefore be granted as to all claims against Detectives Mangoni, Collins, and Reinhold.

Having addressed the City Defendants' arguments which pertain to multiple claims, the Court will now consider their claim-specific arguments, beginning with Count II, civil rights conspiracy. To state a claim for civil rights conspiracy pursuant to § 1983, a plaintiff must allege:

> "(1) two or more persons conspire to deprive any person of [constitutional rights]; (2) one or more of the conspirators performs . . . any overt act in furtherance of the conspiracy; and (3) that overt act injures the plaintiff in his person or property or deprives the plaintiff of any right or privilege of a citizen of the United States," with the added gloss under § 1983 that the conspirators act "under the color of state law."

*Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 294 n.15 (3d Cir. 2018) (citations omitted). The first element requires that the conspirators "'reached an understanding' to deprive [the plaintiff] of his constitutional rights." *Id.* at 294 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150-52 (1970)). The City Defendants argue the Complaint does not allege facts indicating they reached an agreement or understanding. Because Detectives Mangoni, Collins, and Reinhold will be dismissed, the only City Defendant left in this claim is Officer Keenan. The Complaint alleges he falsely testified at the request of ADA Desiderio. *See* Compl. ¶¶ 57, 60, 98, ECF No. 1. This allegation implies the requisite "understanding" to fabricate evidence in violation of Carson's Fourteenth Amendment rights. The motion to dismiss this claim will thus be denied as to Officer Keenan.[10]

Count V is a § 1983 claim for supervisory liability against the City, premised on failure to train in both the Philadelphia Police Department and the DA's Office.[11] The City argues this claim should be dismissed because it is "devoid of any factual allegations." Mem. Supp. Mot. Dismiss 26, ECF No. 8. In response, Carson points to the following allegations: (1) the DA's Office suppressed exculpatory evidence as a matter of policy, and (2) the Police Department engaged in pervasive investigatory misconduct, including fabrication of evidence, coercion of witnesses,

---

[10] The Court notes, however, it is not clear Carson can recover against Officer Keenan under a Fourteenth Amendment theory *and* a civil rights conspiracy theory. *See Miller v. Goggin*, 672 F. Supp. 3d 14, 54-55 (E.D. Pa. 2023).

[11] Count V was also pled against DA Abraham, who has been dismissed from the case. *See* n. 1.

failure to conduct proper investigations, and crediting unreliable tips. Mem. Supp. Pl.'s Resp. Opp'n 24-25, ECF No. 13-2.

"[A] municipality may be liable for the failure to train its employees only where that failure amounts to 'deliberate indifference to the [constitutional] rights of persons with whom the police come in contact.'" *Doe v. Luzerne Cnty.*, 660 F.3d 169, 179 (3d Cir. 2011) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). The failure to train must show a "deliberate or conscious choice by the municipality." *Id.* (internal quotation marks and citation omitted). To state a claim for failure to train, Carson must allege: "(1) municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Id.* at 180 (quoting *Carter v. City of Phila.*, 181 F.3d 339, 359 (3d Cir. 1999)). Additionally, "'for liability to attach in this circumstance the identified deficiency in a city's training program must be closely related to the ultimate injury,' meaning that the plaintiff must '[plead] that the deficiency in training actually caused [the constitutional violation at issue].'" *Id.* (quoting *City of Canton*, 489 U.S. at 391) (second alteration in original).

Carson's failure to train claim fails with respect to the DA's Office because he has not pled that "the situation involves a difficult choice or a history of employees mishandling." *Id.* The pertinent section of the Complaint alleges the DA's Office routinely violated *Brady*. *See* Compl. ¶¶ 75-82, ECF No. 1. But it fails to outline a need for training due to a "difficult choice," or to cite specific cases or examples which would show the necessary history of "mishandling." *Doe*, 660 F.3d at 180. As to the Police Department, the Court has already concluded the Complaint fails to allege any constitutional violations by Detectives Mangoni, Collins, and Reinhold. With respect to Officer Keenan's false testimony, the failure to train claim runs into a different problem.

13

Although the Complaint details police misconduct in other homicide investigations from the 1980s and 1990s, these allegations pertain to coercion of witnesses. *See* Compl. ¶¶ 86, 100, ECF No. 1. False testimony and investigatory misconduct are different violations, and Carson has not pled any facts which show the Police Department (or the DA's Office) routinely failed to train its employees to refrain from perjury. Therefore, the City Defendants' motion to dismiss will be granted as to Carson's claim for supervisory liability (failure to train).

Finally, in Counts VI and VII Carson asserts claims for municipal liability pursuant to *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). A municipality may not be held liable for a constitutional violation under § 1983 based solely on the conduct of its employees. *See Monell*, 436 U.S. at 691. Rather, "[w]hen a suit against a municipality is based on § 1983, the municipality can only be liable when the alleged constitutional transgression implements or executes a policy, regulation, or decision officially adopted by the governing body or informally adopted by custom." *McTernan v. City of York*, 564 F.3d 636, 657 (3d Cir. 2009) (internal quotation marks and citations omitted). In other words, the plaintiff must establish "a deprivation of a constitutional right" as well as causation: the municipality "may only be held accountable if the deprivation was the result of municipal custom or policy." *City of Okla. City v. Tuttle*, 471 U.S. 808, 817 (1985) (internal quotation marks omitted). "Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (citation omitted). And custom "can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Id.* (citation omitted).

14

In moving to dismiss, the City argues Carson "does not allege facts supporting any single theory of municipal liability," and that "despite importing a host of alleged wrongs, [he] does not allege facts linking those alleged wrongs to the constitutional violations he alleges occurred in this case." Mem. Supp. Mot. Dismiss 19, ECF No. 8. The Complaint refers to numerous theories of municipal liability, including coercing witnesses to give false statements, fabricating statements and other inculpatory evidence, withholding exculpatory evidence, and failing to adequately train, supervise, and discipline police officers and prosecutors. Compl. ¶ 141, ECF No. 1. As previously stated, Carson has pled the following misconduct: coercion of a false statement from Wylie by ADA Desiderio, false testimony by Officer Keenan, and withholding three *Brady* statements by the DA. Carson has also pled the DA's Office, together with the Police Department, had a policy or custom of coercing false statements, *see id*. at ¶¶ 94-97, the DA's Office had a policy or custom of suppressing *Brady* material, *see id.* at ¶¶ 75-82, and the City of Philadelphia failed to adequately discipline police officers for misconduct, *id.* ¶ 93. He has not, however, pled the Police Department had a policy or custom of testifying falsely in court. As such, the motion to dismiss will be denied insofar as Carson seeks to bring a municipal liability claim premised on fabrication of evidence, *Brady* violations, and failure to discipline.[12] To the extent Carson seeks to bring a municipal liability claim based on any other theory, the Court agrees with the City–the pleadings do not clearly establish the theory of liability, or the causal link between the misconduct in this case and a municipal policy or custom.

---

[12] To bring a *Monell* claim based on failure to discipline, a plaintiff must plead "both contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents and circumstances under which the supervisor's actions or inaction could be found to have communicated a message of approval to the offending subordinate." *Montgomery v. De Simone*, 159 F.3d 120, 127 (3d Cir. 1998). Carson has pled a failure to discipline under both options.

15

**CONCLUSION**

Defendants' motion to dismiss will be granted as to (1) the malicious prosecution claim; (2) the failure to intervene claim; (3) the supervisory liability claim; (4) the Fourteenth Amendment claims against Detectives Mangoni, Collins, and Reinhold; and (5) the civil rights conspiracy claim against the Detectives. The Court will dismiss the malicious prosecution and failure to intervene claims with prejudice. The remaining claims, however, will be dismissed without prejudice. The motion to dismiss will be denied as to (1) the Fourteenth Amendment claims against Officer Keenan; (2) the civil rights conspiracy claim against Officer Keenan; and (3) the municipal liability claim, to the extent this claim is premised on fabrication of evidence, *Brady* violations, and failure to discipline.

An appropriate Order follows.

BY THE COURT:

/s/ Juan R. Sánchez
Juan R. Sánchez, J.