**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SAMUEL CARSON** | : | **CIVIL ACTION** |
| **Plaintiff** | : | |
| | : | |
| **VS.** | : | |
| | : | **NO.  2:23-CV-02661-JS** |
| **CITY OF PHILADELPHIA. et al.** | : | |
| **Defendants** | : | |

## <u>ORDER</u>

*AND NOW*, to wit, this _____ day of _____, 2025, upon consideration of

Defendants Motion for Summary Judgment, and supplemental filings, and Plaintiffs' responses

in opposition thereto,  it is hereby ORDERED AND DECREED that the Defendant's Motion for

Summary Judgment is DENIED in its entirety.

BY THE COURT:

_____

JUAN R. SANCHEZ,  J.

**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SAMUEL CARSON** | : | **CIVIL ACTION** |
| **Plaintiff** | : | |
| | : | |
| **VS.** | : | |
| | : | **NO. 2:23-CV-02661-JS** |
| **CITY OF PHILADELPHIA. et al.** | : | |
| **Defendants** | : | |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS

Plaintiff, by and through the undersigned counsel, Shawn K. Page Esquire and Dean Owens Esquire, hereby submit this response to Defendant's Statement of Undisputed Facts and Motion for Summary Judgment filed by Defendant City of Philadelphia and David Desiderio and aver as follows:

1. Admitted.

2. Admitted.

3. Admitted.

4. Admitted.

5. Admitted.

6. Admitted.

7. Admitted.

8. Admitted.

9. Admitted.

10. Admitted.

11. Admitted.

12. Admitted.

13. Admitted.

14. Admitted.

15. Admitted.

16. Admitted.

17. Admitted.

18. Admitted.

19. Admitted.

20. Admitted.

21. Admitted.

22. Admitted.

23. Admitted.

24. Admitted.

25. Admitted.

26. Admitted.

27. Denied. Monique Wylie repeated the story of the shooting as told to her uncle Eric
    Matthews and then relayed to her.  That story did not initially include Plaintiff.  On
    another page of the interview the question was presented to Wylie was anyone with
    "Ikey" the shooter to which Ms. Wylie responded Sam Carson.  There was no follow-up
    question to ascertain if Plaintiff was involved in the shooting or at which point Carson
    may have been with "Ikey".  Police Officer Glen Keenan implicated Mr. Carson in an
    interview taken ten minutes later which appeared to fill in the blanks of Ms. Wiley's

hearsay based story. Compare the interview of Monique Wylie (ECF Document No. 30-3) with the interview of Glen Keenan (ECF Document No. 30-8) taken on the same day.

28. Admitted.

29. Admitted.

30. Admitted.

31. Denied. According to his own testimony, Police Officer Keenan purportedly interviewed Monique Wylie over the phone on November 22, 1993 and picked her up for her second interview on November 30, 1993 with Det McKelky and was the Commonwealth's key witness placing Plaintiff at the murder scene after Edgar Clark the robbery victim and Monique Wylie did not. SEE ECF Doc No. 30-8, interview of Keenan.

> a. On 11-22-93 about 6PM I received a beep from Monique Willey. I returned her call at which time she related that she was approached by three guys The names she gave me was Ike Jones, Sam Carson aka Muscles and the other guy was Larry the other male that was shot. They wanted her to set up the Jamacan guy so that they could rob him. I asked her if she knew the

32. Admitted.

33. Admitted.

CITY 008032

34. Admitted.

35. Admitted.

36. Admitted.

37. Admitted. By way of further answer Mr. Clarke testified that he did not leave the house, scene of the robbery until the next morning.

38. Admitted.

39. Admitted.

40. Admitted.

41. Admitted.

42. Admitted.

43. Admitted.

44. Admitted.

45. Admitted.

46. Admitted.

47. Admitted.

48. Admitted.

49. Admitted.

50. Admitted.

51. Admitted.

52. Admitted.

53. Admitted.

54. Admitted.

55. Admitted.

56. Admitted.

57. Admitted.

58. Admitted.

59. Admitted.

60. Admitted.

61. Admitted.

62. Admitted.

63. Admitted.

64. Admitted.

65. Admitted.

66. Admitted.

67. Admitted.

68. Admitted.

69. Admitted.

70. Admitted.

71. Admitted.

72. Admitted.

73. Admitted.

74. Admitted.

75. Admitted.

76. Admitted.

77. Admitted.

78. Admitted.

79. Admitted.

By: ___*/s/Shawn K. Page Esquire*___

**Shawn Page Esquire,**
**Counsel for Plaintiffs**

## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SAMUEL CARSON** | : | **CIVIL ACTION** |
| **Plaintiff** | : | |
| | : | |
| **VS.** | : | |
| | : | **NO.  2:23-CV-02661-JS** |
| **CITY OF PHILADELPHIA. et al.** | : | |
| **Defendants** | : | |

## <u>STATEMENT OF UNDISPUTED FACTS</u>

This Statement of Undisputed Material Facts is filed in support of the Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment.

1. Samuel Carson was wrongfully  convicted of the murder of William Lloyd in the Philadelphia Court of Common Pleas, in a jury trial that took place in July of 1995. Amended Complaint, Exhibit A hereto, ¶¶ 10–11, 29–33

2. Assistant District Attorney David Desiderio appeared for the Commonwealth and presented four main witnesses in its case in chief: Edgar Clark, Ramon Burton, Monique Wylie, and Ruth Beverly.  Transcript of Trial, Pennsylvania v. Carson, February Term, 1994, No. 2837-2840, July 10, 1995.

3.  At trial, Defendant Desiderio, attempted to introduce false testimony of Monique Wylie, in order to implicate Plaintiff in the murder and or a conspiracy to commit murder/ robbery. *Id.*  When Ms. Wylie refused to lie on the stand, Defendant, ADA Desiderio, rather than simply attempting to offer evidence to impeach with a prior written statement, Defendant Desiderio, called police officer Glenn Keenan, who offered testimony to the contrary of Ms. Wylie's truthful statements to exculpate Plaintiff.

4. Specifically, contrary to the written and recorded interview provided by Ms. Wylie, Officer Keenan testified that Ms. Wylie beeped him the day of the murder, hours after it had occurred, and informed him, Plaintiff and two other men asked her to set up the murder of the decedent.  In reality, Officer Keenan approached Ms. Wylie approximately one week after the murder and took her to police administration where an interview with a detective was conducted. In that interview, attached to the record as ECF Document 30-3; Ms. Wylie offered that she was not a witness and only heard of the murder from someone else, that Plaintiff to her understanding did not enter the house where the shooting occurred and that a man named "Ikey" alone approached her to set up a robbery attempt on the decedent.

5. There is no other testimony, record, Document, note or otherwise to support Officer Keenan's testimony that he had any prior interview with Ms. Wylie which if it occurred at all, went unrecorded and undocumented untill a week later and after Ms. Wylie's interview exculpating Plaintiff. In fact Ms. Wylie's declaration attached to the record as ECF 30-12, makes clear, she was approached first by Officer Keenan on November 30, 1993 invalidating his account that she contacted him first the day of the murder.

6. Ms. Wylie's statement was taken a roughly a week before her own sentencing in an unrelated theft and at Carson trial she testified that ADA Desiderio offered her a reduced criminal sentence if she testified that Mr. Carson, along with others set up the crime at issue, but that she would not so testify because that was not true. (ECF Document 30-10 page 24 lines 1-9)

7. At all material times hereto the commonwealth had been in possession of the interview of Penny Hairston the owner of the home where the robbery took place who had

8. Having reviewed the November 30th 1992 Statement of Ms. Wylie, Defendant

   Desiderio approached her and made her a deal to substantially modify her statement to

   create a story involving Mr. Carson. Defendant Desiderio's efforts to elicit a new

   statement from a witness was investigative, a function normally performed by

   detectives or police officers and thus unconstitutional in his role as trial counsel. Id.

                                 **By:     /s/Shawn K. Page Esquire                    **
                                              **Shawn Page Esquire,**
                                              **Counsel for Plaintiffs**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SAMUEL CARSON | : | CIVIL ACTION |
| Plaintiff | : | |
| | : | |
| VS. | : | |
| | : | NO.  2:23-CV-02661-JS |
| CITY OF PHILADELPHIA. et al. | : | |
| Defendants | : | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS  RESPONSE TO
DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT**

Plaintiff, Samuel Carson  (hereinafter "Plaintiff"), by and through the undersigned

counsel, respectfully submits this Response In Opposition To Defendant's Motion For Summary

Judgement.

## I.    MATTER BEFORE THE COURT

Plaintiff, Sam Carson, wrongfully incarcerated, spent twenty-eight years in

prison. Sixteen of those twenty-eight years Mr. Carson spent on Death Row at a Pennsylvania

State Correctional Institution as he was wrongly convicted of Capital Murder and sentenced

to death.  On or about October 22, 2019, the Philadelphia District Attorney's Office made

available the prosecution and investigatory files from his case in connection with his pending

Petition for Writ of Habeas Corpus. It was then revealed that the Commonwealth possessed

written and signed statements from additional witnesses Ronald Waters, Carlene Matthews,

and Gwendolyn Schilling, none of which they provided to Petitioner or his trial counsel. The

Commonwealth was obliged to disclose these statements pursuant to *Brady v. Maryland*, 373

U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150 (1972), but failed to comply with

its constitutional obligation. Specifically, the Philadelphia Police and Assistant District

Attorneys engaged in deliberate deception by concealing and/or suppressing material evidence.  In light of their manipulation of discovery and the Homicide file, Defendants called four witnesses fact witnesses, two of whom were Monique Wylie and Officer Glen Keenan the moving party of the within summary judgment motion. Ms. Wiley, who had been approached by Defendant Keenan eight days after the murder, informed detectives she was not present for the shooting but heard about it from her uncle who had heard it from "the brother of her girlfriend Stacey"  See ECF Doc 30-3.  Ms. Wiley did however have firsthand knowledge that prior to the murder a man named "Ikey approached her to set up a robbery of a man named Edgar. She made it clear Ikey had approached her alone".  Immediately following the less than fruitful Wylie interview, Defendant  Keenan made a peculiar decision. Keenan submitted himself for interview.  Where The "non double-hearsay" portions of the Wylie statement exculpated Plaintiff, Keenan filled in the gaps conjuring if not recalling a new but older interview with himself and Ms. Wylie where she supposedly told him that Sam Carson was involved in a plot to rob Edgar Clark.   At trial, Ms. Wylie, who had since been incarcerated, testified that Defendant Desiderio visited her offering to reduce her sentence and relocate her to Florida if she testified against her own prior statement and included Plaintiff Carson in a conspiracy to commit robbery upon Edgar. She declined. When Ms. Wylie told the truth, consistent with her interview on the stand, Mr. Desiderio called Defendant Keenan, a police officer, to "correct the record" on What Ms. Wylie's account of the murder plot was.  Of note the victim of the robbery, Edgar Clark also testified to exculpate Plaintiff from the robbery as he simply was not there and did not take part. The Commonwealth's case required  Keenan because without him it would have to based on the testimony of Ruth Beverly.  Beverly is the only witness including Ramon Burton (one of the

gunman in the shooting), who said Plaintiff shot the decedent. She was known to have a chronic drug problem and was impeached by Troy Powell a defense witness  who was with her that night and testified that Beverly could not have possibly seen the shooting because she had collapsed to the ground prior to the shooting due to her own intoxication.

The commonwealth's last key witness, Mr. Ramon Burton, reputed drug dealer and friend of Edgar Clark, testified that he saw Plaintiff on the scene and that Edgar Clark told him Plaintiff was there despite the fact Edgar Clark himself testified that he never saw Plaintiff. SEE ECF doc No 30-10 page 62 lines 19-24 and page 63 1-11

```
     Q.   On the night of of the incident I'm going
  to direct your attention again to November 22nd,
  1993, on that date did you have occasion to go to
  the 2100 block of Clymer Street in South
  Philadelphia?
     A.   Yes, I did.
```

CITY 002079

Q.    Why did you go there?  Explain to this Court what happened.

A.    I was on my way down to South Philly.  I got a page from Edgar.  That's my son.  And I stopped to answer the page, and he told me that Hook had came inside there with two guys and what had happened to him, they stuck a gun to his head and all that talking to him about he being down there.

Q.    And what else -- this was on the phone?

A.    That was on the phone.

Ramon Burton went on to testify that he hopped in his girlfriend's car presumably to rescue his friend Edgar, but when he got there the men were firing.

Q.    What kind of car were you driving?

A.    A four-door Honda Accord.

Q.    And you said they started firing.  At that point did you know who was firing?

A.    Yeah, I could see where the light was coming from.

Q.    And where was it coming from?

A.    My right side.

Q.    And who was on your right side?

A.    Muscles and Hook.

Ramon burton, who crafted the tale of his journey to rescue his friend Edgar would have been easily impeached by buy two witnesses. Ronald Watters and Charlene Matthews.  Ms.

Matthews, his wife and owner of the Honda accord, had given the Honda accord to Ron the

mechanic to be fixed.  It was Ronald Watters the mechanic who then returned the car to Mr

Mr Burton at 2100 Clymer with the added intention of buying crack cocaine from him.

Ronald Watters arrived at the scene and witnessed the shooting and described a lone gunman

who fired at Burton who was quite obviously already there.  The statement of Ronald Watters

taken November 24, 1993 and the statement of Charlene Matthews taken December 6, 1993

would have destroyed the credibility of the final Prosecution fact witness and a s a result they

were not released until twenty-five years after the trial.  Plaintiff was denied a fair trial and

sue these constitutional violations, Plaintiff was sentenced to death on July 18, 1995. The

Supreme Court of Pennsylvania affirmed Petitioner's convictions and death sentence in

Commonwealth v. Carson, 741 A.2d 686 (Pa. 1999), cert. denied, 530 U.S. 1216 (2000)

(Carson-1). Once the Waters and Matthews statements were finally released no court could

stand behind this great miscarriage of justice.  Plaintiff was later resentenced to life

imprisonment on April 4, 2011. On July 12, 2021, Mr. Carson's conviction for First Degree

Murder was overturned. Plaintiff given the choice between waiting for a new trial and choosing

his freedom in light of the fact he needed surgery chose freedom, and accepted a plea to third

degree murder in exchange for his release.

## II.    **LEGAL STANDARD**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict

for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual

dispute is "material" if it might affect the outcome of the case under governing law. Id.

A party seeking summary judgment always bears the initial responsibility for informing

the district court of the basis for its motion and identifying those portions of the record that it

believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett,

477 U.S. 317, 322 (1986). Where the non-moving party bears the burden of proof on a particular

issue at trial, the moving party's initial burden can be met simply by "pointing out to the district

court that there is an absence of evidence to support the non-moving party's case." Id. at 325.

After the moving party has met its initial burden, the adverse party's response must, by "citing to

particular parts of materials in the record," show that a fact is "genuinely disputed." Fed. R. Civ.

P. 56(c)(1). Summary judgment is appropriate if the non-moving party fails to rebut by making a

factual showing "sufficient to establish the existence of an element essential to that party's case,

and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Under

Rule 56, the Court must view the evidence presented on the motion in the light most favorable to

the opposing party. Anderson, 477 U.S. at 255.

## III.    ARGUMENT

### THE PHANTOM INTERVIEW TAKEN BY OFFICER GLENN KEENAN, SUPRESSION OR FABRICATION?

There is a genuine issue of material fact as to the purported interview conducted by

Defendant  Keenan conducted with Monique Wylie on November 22nd 1993. To be clear

Plaintiff's conviction was overturned largely in part due to the suppressed exculpating statements

of Ronald Watters and Charlene Matthews.  As such, It has already been established Defendants

were willing to conceal and suppress evidence in this case and with respect to ADA Desiderio

others as well.  Police Officer Glen Keenan not a detective, testified under oath that he took a

statement from Ms. Wylie hours  after a deadly shooting resulting in the death of an innocent

where she named three probable suspects on of which was apprehended on the scene. We are
asked to believe Keenan waits eight full days before attempting to bring her in and in the interim
never makes so much of a notation of the call, fills out an interview form or alerts detectives to
her existence. In fact, his conversational wording in his own interview makes it appear
everything happened the same day which if it did occur all in the same day on November 30,
1993 it would be corroborated by Ms. Wylie's letter to Judge DiClaudio (ECF Doc No. 30-12).
Keenan's use of the words "Later today" brings a contemporaneous feel to the timeline of event
described in his interview as if all of the conversation he had with Wylie was conducted earlier
that day and then "later today" he got a hold of the detectives.



Where much of Defendant's motion seeks to absolve Officer Keenan from any wrongdoing due
to the immunity afforded to officers testifying at trial, it is simply a red herring as the bigger
problem is that he fabricated the information contained in his interview which was then used as
the only seemingly credible testimony in the trainwreck of witnesses called in the Carson Trial.
In 1993 Monique Wylie gave a statement that Plaintiff was not involved in the plot to rob Edgar
Clark in her interview with Detective McKelvie. In 1995 Monique Wylie gave a consistent
statement that Plaintiff was not involved in the robbery at trial. Finally, in 2001 Monique Wylie
gave a consistent statement that Plaintiff was not involved in the robbery in her letter to the
Honorable Judge Scott DiClaudio. Notably, Ms. Wylie could have taken Defendant Desiderio's

offer to testify against Plaintiff. Had she took, she would have and freed herself from incarceration, to be reunited with her mother and daughter. Moreover, had she taken the offer she would have then be moved to Sunny Florida. Despite of this she still acted against her own interest and in the name of the truth. Monique gave the same statement at trial that she always had, that Sam was not involved. Somehow Officer Keenan got a different statement. A statement differing in its entirety from the one Ms. Wylie relayed to detectives. In Keenan's mind Wylie's statement implicated Sam Carson and more than that actually included implicating herself as being a part of the robbery plot. It is Plaintiff's position that this was indeed a fabrication for all of the aforesaid reasons and strategically done because Wylie's true and actual statement, given to Detective McKelvie, was otherwise worthless against Plaintiff. As a result, the interview of Glenn Keenan takes place a mere ten minutes after the interview of Wylie and is virtually the opposite of what Ms. Wylie told Detective McKelvie.

### A GENUINE ISSUE OF MATERIAL FACT EXISTS AS TO THE SUPRESSION

Alternatively, in the event that at 6:00 pm on November 22, 1993 Monique Wylie beeped Officer Glenn Keenan and in response Glenn Keenan called back. In addition to calling back he then visits Ms. Wylie at 23rd and Montrose. This timeline is described by Keenan at trial. ( See ECF Doc No 30-10 page 44 lines 16-21)

```
16        Q.    Where were you when Miss Wilie gave you
17     this information?
18        A.    I talked to her I believe I was on the
19     phone and I talked to her in person.
20        Q.    And were did you talk to her in person?
21        A.    23rd and Montrose.
```

There should have been a statement taken, interview recorded or at least a note for both of these encounters. Officer Keenan was not the assigned homicide detective or even a detective at all. Officer Keenan inarguably concealed evidence that these were two conversations ever happened by not making note of them or recording them in writing in any manner or fashion. Assuming he failed to do so, because much like Watters and Matthews there is also the possibility that he did take notes or did take a statement in writing and those documents were simply concealed because they also did not fit the narrative needed to convict Sam Carson. Be that as it may, should the original statement(s) of Monique Wylie exist and were never turned over they was suppressed and concealed. Actual existence or non-existence of said statement not only establishes deliberate deception and deliberate indifference but also failure to train and supervise. As an officer Keenan must follow polices and procedures. The procedures may not and can not allow for an officer to lose a witness such a gaffe could ruin an investigation. As a result witness information must efficiently be delivered to detectives where a police officer comes into contact with said witness before the detective.

The municipality is liable when either the policy or custom facially violates the Constitution, or if not unconstitutional itself, is the "moving force" behind the constitutional violation. Thomas v. Cumberland Cnty., 749 F.3 217,222 (3d Cir. 2014). A "custom" is a practice that is "so permanent and well settled as to virtually constitute law." Beck, 89 F.3d at 971. A custom may be established by "evidence of knowledge and acquiescence." Id. "A plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom." Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990). "This does not mean, however, that the responsible decisionmaker must be specifically identified by the plaintiff's evidence. Practices 'so permanent

and well settled as to have the force of law [are] ascribable to municipal decisionmakers.'" Id.

(quoting Anela v. City of Wildwood, 790 F.2d 1063, 1067 (3d Cir. 1986)).

## THE SUPPRESSION OF THE WYLIE INTERVIEW AS THE BASIS FOR TRIAL TESTIMONEY OF OFFICER GLEN KEENAN.

Defendant's motion notes:

"for Plaintiff to prevail must prove fabricated evidence was used at trial and demonstrate it "was so significant that it could have affected the outcome of the criminal case." *Halsey*, 750 F.3d at 295. Thus, for this claim to survive, Plaintiff must show that Officer Keenan somehow introduced fabricated evidence into the trial through Wylie."

Keenan clearly fabricated the Wylie statement to include the implication of Carson and as such served as the prosecution's (albeit fabricated) vessel for the desired Wylie testimony. This testimony was sorely needed as the victim of the Robbery himself absolved Plaintiff thus leaving no other vehicle for him to be connected.

## PLAINTIFF'S CLAIMS WOULD NOT BE BARRED UNDER HECK PURSUANT TO HIS GUILTY PLEA.

As the very well learned and Honorable Court is well aware, The Heck doctrine precludes plaintiffs in § 1983 suits from bringing an action for damages where it would "necessarily imply the invalidity of [the plaintiff's] conviction." Heck v. Humphrey, 512 U.S. 477, 487 (1994). However, Heck does not apply where the original conviction is vacated. See Poventud v. City of New York, 750 F.3d 121, 134 (2d Cir. 2014). Where the original conviction is vacated, the subsequent conviction is presumed to be free of the misconduct alleged in the original conviction. Id. Recently this very court examined the issue in Dennis v. City of Philadelphia, where the plaintiff's deliberate deception claim did not imply the invalidity of his subsequent third-degree murder conviction because his

first-degree murder conviction was vacated. 2024 WL 3904046, at *3 (E.D. Pa. Aug. 22, 2024) (Sánchez).


## PLAINTIFF 'S CONSPIRACY CLAIM IS SUPPORTED BY THE VIOLATION OF MONELL AS WELL AS THE 14TH AMENDMENT VIOLATIONS

Deprivation of liberty without due process of law and denial of a fair trial under the Fourteenth Amendment, specifically, for deliberately deceiving, concealing and/or suppressing material evidence was established organically through Plaintiff's own efforts of uncovering the Watters and Matthews statements 25 years after the trial. Whereas both of those witnesses could have been used to impeach Ramon Burton, Plaintiff was robbed of the chance of a fair trial. Whereas the statements taken by the detectives existed but never made it the H-File and thus never to defense counsel despite requests before and after trial; Plaintiff has established a genuine issue of material fact as it relates to the conspiracy claim as several different sets of hands and eyes failed to turn over the statements.  Defendants conspired to fail or refuse to produce these documents throughout the pre trial discovery period, trial, and post trial process a fact made even more disgusting by the realization the Plaintff spent sixteen years on death row and even had his death warrant signed.



As is the standard for Summary judgment, The court must determine whether there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-257 (1986); Matsushita Elec. Indus. Co. v.

Zenith Radio Corp., 475 U.S. 574, 587-589 (1986). The burden of proof tasks the nonmoving

party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in

support of its right to relief. Bixler v. Lamendola, 2022 WL 2441567, *3 (M.D. Pa. July 5,

2022); Pappas v. City of Lebanon, 331F.Supp.2d 311, 315 (M.D. Pa. 2004); Celotex Corp. v.

Catrett, 477 U.S. 317, 322-323 (1986).  Here Plaintiffs have clearly evinced a genuine issue as to

material fact at several levels, on the Monell claim and as such  defendant's motion for summary

judgment must be denied.


**V.    CONCLUSION**

        The evidence of record in this action as gleaned from deposition transcripts, documentary

evidence, collectively establish That Defendants engaged in unconstitutional misconduct in

homicide investigations and at trial. In sum, for the reasons outlined above, and where disputed

issues of material fact exist to preclude the grant of summary judgment in the moving

Defendants' favor, the Plaintiffs respectfully request that the moving Defendants Motion for

Summary Judgment be Denied in its entirety.


                                                        **Respectfully submitted,**

                                                        ***/s/Shawn K. Page Esquire***
                                                        ***/s/Dean Owens Esquire***
                                                        **Shawn Page Esquire,**
                                                        **Counsel for Plaintiffs**

## CERTIFICATE OF SERVICE

I, **Shawn Page, Esquire**, attorney for plaintiffs, hereby certify that I am duly authorized to make this certification; I hereby certify that on July 8, 2025 Plaintiffs Response to Defendant's Motion for Summary Judgment was filed via the Court's electronic filing system and is available for downloading.

Derek Kane Esquire
City of Philadelphia Law Department
1515 Arch Street, 14th Floor
Philadelphia, PA 19102

Joseph J. Santarone, Esq.
Marshall Dennehey
2000 Market Street, Suite 2300
Philadelphia, PA 19103

By:_____*/s/Shawn K. Page Esquire*_____
                    **Shawn Page Esquire,**
                    **Counsel for Plaintiffs**