IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SAMUEL CARSON | : | CIVIL ACTION |
| | : | |
| v. | : | No. 23-2661 |
| | : | |
| CITY OF PHILADELPHIA, et al. | : | |

## MEMORANDUM

**Judge Juan R. Sánchez**                                                                     September 11, 2025

In 1995, Plaintiff Samuel Carson was convicted of first-degree murder and sentenced to death row. After receiving files from the Philadelphia District Attorney's Office in 2019 containing previously undisclosed witness statements, Carson pled guilty to first-degree murder in exchange for a sentence of 14 to 28 years of incarceration instead of waiting for a new trial. He subsequently brought this 42 U.S.C. § 1983 suit against Defendants Philadelphia Police Officer Glenn Keenan ("Officer Keenan"), former Assistant District Attorney David Desiderio ("ADA Desiderio"), and the City of Philadelphia, alleging he was wrongfully convicted. Carson asserts fabrication and suppression of evidence claims against Officer Keenan and ADA Desiderio and asserts *Monell* claims against the City. Defendants have moved for summary judgment. Because Carson fails to provide evidence to support his allegations, Defendants' motions will be granted and judgment entered in their favor.

**BACKGROUND**[1]

In the early morning hours of November 22, 1993, William Lloyd was shot to death on the 2100 block of Clymer Street in Philadelphia. Am. Compl. ¶¶ 29-31, ECF No. 19. Carson was

---

[1]     All pin cites are to ECF pagination.

eventually arrested, charged, and tried for this murder. *Id*. Officer Keenan participated in the investigation and ADA Desiderio prosecuted the murder.

According to Officer Keenan, Monique Wylie, a civilian who would later serve as a witness at trial, contacted him with information about the murder in the evening of November 22, 1993. Keenan Interview, November 30, 1993, CITY 008032-33, ECF No. 30-8. Wylie told Officer Keenan that, right before the shooting, three men approached her about "set[ting] up the Jamaican guy so that they could rob him." *Id*. According to Wylie, Carson was one of the men who approached her, and Lloyd was an innocent bystander who was shot. *Id*. Officer Keenan recounted his conversation with Wylie to Detective Paul McKelvie on November 30, 1993. *Id*.

That same day, Officer Keenan brought Wylie in for an interview with Detective Collins. Wylie Interview, November 30, 1993, CITY 007765-72, ECF No. 30-3. In the interview with Detective Collins, Wylie stated she was approached the night before the shooting by Ike Jones, who asked her 'to show him where the Jamaicans were at so that he could rob them but [she] refused." *Id*. at 7. Wylie later heard that Ike, Carson, and a man named Hook,[2] walked into Penny Hairston's house at 2217 Clymer Street to rob a man named Edgar. *Id*. at 1. Wylie stated she was not present for the shooting. *Id*. at 3.

Detective Richard Reinhold interviewed Penny Hairston on November 30, 1993. Hairston Interview, November 30, 1993, CITY 007747-7753, ECF No. 30-6. Hairston told Detective Reinhold that "a Jamaican boy named Edgar," who started selling drugs on his block a few days before the shooting, "came into [his] house to keep warm" around 11 p.m. on November 21, 1993. *Id*. at 1. Around 1:30 a.m. the following morning, Carson, Hook, and a man named Sleepy, entered Hairston's house asking about Edgar. *Id*. at 2. While Carson and Hairston were in the kitchen,

---

[2]   "Hook" is Lawrence Eddins's nickname. *See* ECF No. 30-3 at 3.

Sleepy and Hook were in the "front room" threatening Edgar. *Id*. After the three men left, Edgar used Hairston's phone to call "his father." *Id*. A few minutes later, Hook and Sleepy came back and robbed Edgar. *Id*. "Not even 30 seconds after [Hook and Sleepy] left," Hairston heard gunshots. *Id*.

At trial, the Commonwealth's case primarily depended on four witnesses: Edgar Clarke, Ramon Burton, Monique Wylie, and Ruth Beverly. Am. Compl. ¶ 32. Edgar Clarke testified that on November 22, 1993, he was at Penny Hairston's house when Carson and two other men entered. N.T. July 7, 1995, CITY001908-2017, ECF No. 30-9 at 93. Carson went into the kitchen with Hairston, while the two other people harassed Clarke in the living room. *Id*. at 94-95. After Carson and the two men left, Clarke called Ramon Burton and asked him to come over because of what happened. *Id*. at 95-96. Clarke further testified that, sometime after the call, the two men returned without Carson, robbed him, and left. *Id*. at 96-97. Five minutes later, Clarke heard gunshots. *Id*. at 98-99.

Burton testified that on November 22, 1993, Clarke called him and told him that someone pointed a gun at him. N.T. July 10, 1995, CITY002018-2207, ECF No. 30-10 at 63. Burton then drove to the 2100 block of Clymer Street. *Id*. When he drove past Penny Hairston's house, Carson and Hook fired at him. *Id*. at 64-67. He then got out of his car and returned fire, eventually shooting Hook. *Id*. He testified that he heard a second series of gunshots after he stopped shooting. *Id*. at 70. Ruth Beverly testified that she witnessed Carson shoot Lloyd on November 22, 1993. *Id*. at 135.

Wylie testified that, around 8 p.m. on November 21, 1993, she saw Carson sitting with Ike Jones and Hook at a bar on 22nd and Christian. *Id*. at 5-6. Ike then approached Wylie and asked her to help him rob someone who was at Penny Hairston's house. *Id*. at 6-8. Wylie refused, and he

3

returned to sitting with Carson and Hook. *Id*. She testified that she had no information about the shooting. *Id*. at 25. Rather, she told the jury she was high on crack cocaine when she gave her statement to Detective Collins on November 30, 1993. *Id*. at 19. Further, she testified that ADA Desiderio promised to reduce an impending criminal sentence if she cooperated, and someone from the District Attorney's Office told her she was "supposed to testify that all three people, Hook, Ike, and [Carson] wanted [her] to set up this robbery." *Id*. at 23. Wylie met with ADA Desiderio on the day of her trial testimony and once before that. *See* ECF No. 30-10 at 8. Officer Keenan testified that, in the evening of November 22, 1993, Wylie told him Ike Jones approached her about setting up the robbery of a Jamaican man, and the robbery would involve Carson and Hook. *Id*. at 42-43.

On July 14, 1995, Carson was convicted of the murder of Lloyd and received a death sentence on July 18, 1995. Am. Compl. ¶¶ 11, 33. On August 21, 2001, Wylie signed a declaration stating that she made up the information she shared with Officer Keenan on November 22, 1993, and made up the information she shared with Detective Collins on November 30, 1993. Wylie Declaration, ECF No. 30-12. Wylie further stated she cannot recall if she ever saw Carson the night of November 21, 1993, and "certainly never saw him shoot anyone as [ADA Desiderio] suggested I testify." *Id*. Carson's death sentence was commuted to life imprisonment on April 4, 2011. Am. Compl. ¶ 63. On July 12, 2021, after spending 27 and a half years in prison, Carson's conviction was vacated on collateral review. *Id*. ¶ 64. He pled guilty to third-degree murder in exchange for a sentence of 14 to 28 years of incarceration, instead of waiting for a new trial. He was released thereafter on time served. *Id*. ¶ 67.

Carson filed the Amended Complaint on August 24, 2024, naming ADA Desiderio, Officer Keenan, and the City of Philadelphia as Defendants. Against ADA Desiderio, Carson alleges he

4

fabricated evidence, suppressed evidence, and coerced Wylie and Officer Keenan to offer false testimony at trial. Against Officer Keenan, Carson alleges he falsely testified at the request of ADA Desiderio. He alleges Officer Keenan and ADA Desiderio conspired to violate his civil rights. And against the City, Carson alleges a municipal liability claim premised on fabrication of evidence, *Brady* violations, and failure to discipline. All Defendants moved for summary judgment on June 20, 2025. The Court held oral argument on the motions on July 31, 2025. The motions are now ripe for review.

**STANDARD OF REVIEW**

A court must grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts "affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the [non-moving] party." *Id*. at 248.

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks and citation omitted). To defeat summary judgment, "a nonmoving party must adduce more than a mere scintilla of evidence in its favor . . . and cannot simply reassert factually unsupported allegations contained in its pleadings[.]" *Williams v. Borough of W. Chester, Pa.*, 891 F.2d 458, 460 (3d Cir. 1989). Rather, the nonmovant "must point to concrete evidence in the record that supports each and every essential element of his case." *Orsatti v. New Jersey State Police*, 71 F.3d 480, 484 (3d Cir. 1995) (citations omitted). In evaluating a motion for summary judgment, a court must "view all facts in the light most

5

favorable to the non-moving party and draw all inferences in that party's favor." *Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019).

**DISCUSSION**

Carson alleges ADA Desiderio fabricated evidence, suppressed evidence, and coerced witnesses to offer false testimony at the trial. Am. Compl. ¶¶ 109-112, 114, 118. Specifically, Carson alleges former ADA Desiderio "used Burton's false testimony to bolster Beverly's testimony while simultaneously concealing . . . evidence that contradicted both Burton's and Beverly's testimony." Compl. ¶ 55, ECF No. 1. ADA Desiderio also allegedly "coerced . . . Mr. Burton, Ms. Wylie and Officer Keenan to fabricate false testimony." *Id.* ¶ 110. There are no further factual allegations as to how or when ADA Desiderio "coerced" Burton's testimony, and more importantly, there is no record evidence to support this assertion.[3] As such, the claim as to Burton's testimony fails. As to Wylie's and Officer Keenan's testimonies, Carson alleges:

> Wylie met with ADA Desiderio prior to trial. During that meeting, Ms. Wylie provided a statement, [and] ADA Desiderio offered . . . a reduced sentence on her probation violation if [she] testified that Mr. Carson . . . solicited her to assist in a robbery attempt. Once Ms. Wylie refused, the Commonwealth introduced at trial, through Philadelphia Police Officer Glenn Keenan['s] [testimony], implicating Mr. Carson in the robbery attempt. Ms. Wylie subsequently swore by affidavit [] that she had not witnessed the Lloyd murder but was pressured directly by ADA Desiderio to testify that she had done so.

*Id.* ¶¶ 57-58; *see also id.* ¶ 98.

Prosecutors are entitled to absolute immunity from liability under § 1983 for acts that are "intimately associated with the judicial phase of the criminal process," such as "initiating a prosecution and . . . presenting the State's case." *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976). But "absolute immunity does not extend to '[a] prosecutor's administrative duties and

---

[3] At oral argument, Carson's counsel failed to provide any support for this assertion.

6

those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings.'" *Yarris v. Cnty. of Del.*, 465 F.3d 129, 135 (3d Cir. 2006) (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993)). When a defendant asserts absolute immunity, "the onus is on the prosecutor to demonstrate that absolute immunity should attach to each act he [or she] allegedly committed that gave rise to a cause of action." *Fogle v. Sokol*, 957 F.3d 148, 160 (3d Cir. 2020) (internal quotation marks and citation omitted).

In analyzing whether absolute immunity attaches, courts first "ascertain just what conduct forms the basis for the plaintiff's cause of action." *Roberts v. Lau*, 90 F.4th 618, 625 (3d Cir. 2024) (citation omitted). Second, courts "determine what function (prosecutorial, administrative, investigative, or something else entirely) that act served." *Id*. This analysis "focuses on the unique facts of each case and requires careful dissection of the prosecutor's actions." *Id*. at 627 (quoting *Odd v. Malone*, 538 F.3d 202, 210 (3d Cir. 2008)). However, the "ultimate analysis is whether a defendant has established absolute prosecutorial immunity from a given *claim*." *Fogle*, 957 F.3d at 161.

The sole issue to determine if absolute immunity applies here is whether ADA Desiderio functioned as an advocate or an investigator when he met with Wylie. The quintessential role of a prosecutor is to meet with a witness, discuss testimony, and prepare witness for trial. *See Burns v. Reed*, 500 U.S. 478, 490-91(1991) (finding that "a prosecutor is absolutely immune for initiating a prosecution and for presenting the State's case," which "involve actions preliminary to the initiation of a prosecution"). Wylie met with detectives and gave a statement on November 30, 1993, long before Carson was arrested on January 8, 1994. *See* Carson Arrest Report, CITY007592-7593, ECF No. 30-10. By the time she met with ADA Desiderio, Wylie was identified as a witness, and the purpose of the meeting was to prepare her testimony. *See Roberts*,

7

90 F.4th at 628 (prosecutor is functioning in prosecutorial role when he or she "interview[s] and meet[s] a previously unknown witness who has been located and identified by investigators"). ADA Desiderio is therefore entitled to absolute immunity regarding his meetings with Wylie because he was functioning in a prosecutorial role.[4]

Turning to the civil rights conspiracy claim, Carson asserts ADA Desiderio and Officer Keenan conspired in relation to Officer Keenan's alleged false testimony. "To prevail on a conspiracy claim under § 1983, a plaintiff must prove that persons acting under color of state law 'reached an understanding' to deprive him of his constitutional rights." *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 293-94 (3d Cir. 2018) (citation omitted). "The elements of a claim of conspiracy to violate federal civil rights are that (1) two or more persons conspire to deprive any person of [constitutional rights]; (2) one or more of the conspirators performs . . . any overt act in furtherance of the conspiracy; and (3) that overt act injures the plaintiff in his person or property or deprives the plaintiff of any right or privilege of a citizen of the United States," with the added requirement under § 1983 that the conspirators act under the color of state law. *Id.* at 294 n.15 (internal quotations and citation omitted).

Carson failed to provide any evidence of a conspiracy. The only evidence of any contact between ADA Desiderio and Officer Keenan is that ADA Desiderio called Officer Keenan to testify at Carson's trial. *See Natividad v. Raley*, No. 22-5061, 2025 WL 1550740, at *12 (E.D. Pa. May 30, 2025) (finding a jury could not infer a meeting of the minds based only on the fact that detectives worked on the same case). There is no evidence ADA Desiderio and Officer Keenan

---

[4] Further, Carson failed to provide any evidence to support his allegations about ADA Desiderio's conduct when he met with Wylie. When asked about Wylie's meetings with ADA Desiderio at his deposition, Carson could provide no information about the timing and circumstances of the interview. Carson Dep. Tr. at 136:6-18, ECF No. 30-4. Carson also concedes Wylie did not testify against him at trial despite ADA's Desiderio's alleged coercion.

ever interacted outside of this direct examination. In addition, absolute immunity for testifying police officers "may not be circumvented by claiming that a [] witness conspired to present false testimony or by using evidence of the witness' testimony to support any other § 1983 claim concerning the initiation or maintenance of a prosecution." *Rehberg v. Paulk*, 566 U.S. 356, 369 (2012). Carson's civil rights conspiracy claim fails because he presents no evidence of a conspiracy.

Carson alleges Officer Keenan fabricated and suppressed evidence in violation of his Due Process rights. Specifically, he alleges Officer Keenan provided false testimony—though it is unclear if Carson is referring to Officer's Keenan trial testimony or his testimony to Detective McKelvie on November 30, 1993. Carson also alleges Officer Keenan suppressed evidence by failing to take notes of his call with Wylie on November 22, 1993.

To prevail on a fabrication of evidence claim, a plaintiff must show (1) that the defendant offered false evidence knowingly, willfully, or with reckless disregard for the truth; and (2) causation, i.e., that there is a reasonable likelihood that, without the use of that evidence, the defendant would not have been convicted. *Hicks v. City of Philadelphia*, No. 22-977, 2025 WL 1448205, at *10 (E.D. Pa. May 20, 2025) (citing *Halsey v. Pfeiffer*, 750 F.3d 273, 294-95 (3d Cir. 2014) and *Mervilus v. Union Cnty.*, 73 F.4th 185, 194-95 (3d Cir. 2023)). "[T]estimony that is incorrect or simply disputed should not be treated as fabricated merely because it turns out to have been wrong." *Halsey*, 750 F.3d at 295.

Carson's fabrication claim is predicated on Wylie's 2001 Declaration. In that declaration, Wylie stated she had a relationship with Officer Keenan that consisted of her providing information for payment, and she would sometimes make things up to tell Officer Keenan. She stated that she made up the information she relayed to Officer Keenan on November 22, 1993.

9

However, neither the declaration nor any other record evidence demonstrates that Officer Keenan ever knew Wylie provided false information as to Carson. Further, Officer Keenan has absolute immunity as a testifying witness for his trial testimony. *See Kulwicki v. Dawson*, 969 F.2d 1454, 1467 (3d Cir. 1992) ("Witnesses who testify falsely at trial are" protected by absolute immunity.). Therefore, Carson's fabrication claim fails.

Turning to the suppression of evidence claim, Carson argues Officer Keenan suppressed evidence by failing to take notes of his call with Wylie and failing to get a signed statement from Wylie immediately thereafter.[5] "[A] claim for deliberate deception in violation of due process must go beyond the failure to disclose evidence and arises when imprisonment results from the knowing use of false testimony or other fabricated evidence or from concealing evidence to create false testimony to secure a conviction." *Dennis v. City of Philadelphia*, 19 F.4th 279, 291 (3d Cir. 2021). Plaintiff must prove that Officer Keenan intended to deceive the court or jury, and that he would not have been convicted of first-degree murder without Officer Keenan's alleged deception. *See Dennis v. City of Philadelphia*, 379 F. Supp. 3d 420, 432 (E.D. Pa. 2019); *Natividad*, 2025 WL 1550740, at *9.

Carson provided no legal basis for his argument that failure to take notes of Wylie's call is suppression of evidence. In addition, about a week after the call, Officer Keenan testified to his recollection of the call to Detective McKelvie and brought Wylie in for an interview with Detective Collins. There is no evidence of an intent to deceive the jury or court by failing to take notes of

---

[5] It is unclear whether Carson is alleging a *Brady* suppression claim or a deliberate deception claim. If it is a *Brady* claim, Officer Keenan is entitled to qualified immunity because the attachment of Brady disclosure obligations to police officers was not "widely addressed until [after 1995]." *Gibson v. Superintendent of N.J. Dep't of L. & Pub. Safety-Div. of State Police*, 411 F.3d 427, 444 (3d Cir. 2005).

the November 22nd call. Further, Officer Keenan and Wylie's testimony were relevant to Carson's robbery charge, not the first-degree murder charge.[6] The murder charge was supported by other evidence, mainly the eyewitness testimony of Beverly, who testified that she saw Carson shoot William Lloyd, and the testimony of Burton, who testified that Carson fired shots at him. Carson suppression claim therefore fails.

Turning to the City of Philadelphia, Carson asserts municipal liability claims for fabrication of evidence, *Brady* violations, and failure to discipline against the City. Specifically, Carson asserts his alleged harm is due to the lack of proper custodial care of Wylie's phone call statement to Officer Keenan on November 22, 1993. A municipality may not be held liable for a constitutional violation under § 1983 based solely on the conduct of its employees. *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 691 (1978). Rather, "[w]hen a suit against a municipality is based on § 1983, the municipality can only be liable when the alleged constitutional transgression implements or executes a policy, regulation, or decision officially adopted by the governing body or informally adopted by custom." *McTernan v. City of York*, 564 F.3d 636, 657 (3d Cir. 2009) (internal quotation marks and citations omitted).

In other words, the plaintiff must establish "a deprivation of a constitutional right" as well as causation: the municipality "may only be held accountable if the deprivation was the result of municipal custom or policy." *City of Okla. City v. Tuttle*, 471 U.S. 808, 817 (1985) (internal quotation marks omitted). "Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or

---

[6] The Pennsylvania Supreme Court also found there was "ample independent evidence that [Carson] was a co-conspirator in the robbery that occurred before William Lloyd's murder" and that the combined testimony of Burton, Clarke, and Wylie "alone would have been sufficient to convict [Carson] of conspiracy to commit robbery." *Com. v. Carson*, 913 A.2d 220, 255 (2006).

11

edict." *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (citation omitted). Custom "can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Id.* (citation omitted).

As discussed previously, there are no underlying constitutional violations by Officer Keenan and ADA Desiderio. Further, Carson presents no evidence of a custom or policy of constitutional violations that caused his alleged injuries. Carson conducted no discovery in this case to support his *Monell* claim. Accordingly, his *Monell* claims fail.

**CONCLUSION**

In sum, because Carson failed to provide evidence to support his fabrication of evidence, suppression of evidence, and *Monell* claims, Defendants' summary judgment motions will be GRANTED and judgment entered in their favor.

An appropriate order follows.

BY THE COURT:

/s/ Juan R. Sánchez
Juan R. Sánchez, J.